ACCEPTED
01-14-00969-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/17/2015 3:43:30 PM
CHRISTOPHER PRINI
CLERK

NO. 01-14-00969-CV

IN THE FIRST COURT OF APPEALS
AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/17/2015 3:43:30 PM
CHRISTOPHER A. PRINE
~~Clerk~~

BRYAN BLACK

Appellant,

v.

SMITH PROTECTIVE SERVICES, INC.

Appellee.

ON APPEAL FROM THE
189TH JUDICIAL DISTRICT COURT OF HARRIS COUNTY, TEXAS

**BRIEF OF APPELLANT, BRYAN BLACK**

ORAL ARGUMENT REQUESTED

Respectfully Submitted,

LAW OFFICES OF
PATRICK G. HUBBARD, P.C.
Patrick G. Hubbard
Texas Bar No. 10139500
1075 Kingwood Drive, Suite 203
Houston, Texas  77339
Telephone:  (281) 358-7035
Facsimile:  (281) 358-7008

ATTORNEY FOR APPELLANT
Bryan Black,


## IDENTITY OF PARTIES AND COUNSEL

Appellant:          Bryan Black

Represented By:     Patrick G. Hubbard
                    Law Offices of Patrick G. Hubbard, P.C.
                    phubbard@patrickhubbardlaw.com
                    Texas Bar No. 10139500
                    1075 Kingwood Drive, Suite 203
                    Houston, Texas  77339
                    Telephone:  (281) 358-7035
                    Facsimile:  (281) 358-7008

Appellee:           Smith Protective Services, Inc.

Represented by:     Todd H. Tinker
                    Law Office of Todd H. Tinker, P. C.
                    tinkerlaw@tinkerlaw.com
                    Texas Bar No. 20056150
                    P. O. Box 75380
                    Dallas, Texas  75380
                    Telephone:  (214) 914-3760
                    Facsimile:    (214) 853-4328

ii

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL...............................ii

TABLE OF CONTENTS..............................................iii

TABLE OF AUTHORITIES.......................................iv-v

ISSUES PRESENTED...............................................1

STATEMENT OF THE CASE.......................................2

STATEMENT OF FACTS.........................................3-8

SUMMARY OF THE ARGUMENT...............................8

ARGUMENT AND AUTHORITIES............................8-39

PRAYER ...........................................................38-39

STATEMENT REGARDING ORAL ARGUMENT.............39

CERTIFICATE OF SERVICE.....................................40

CERTIFICATE OF COMPLIANCE..............................41

# TABLE OF AUTHORITIES

Page

*Baptist Mem'l Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex. 1995) ...... 26, 29

*Buck v. Blum,* 130 S.W.3d 285, 288 (Tex.App.-Houston [14th Dist.] 2004, no pet.) .................................................................................................................. 17

*Cosgrove v. Grimes,* 774 S.W.2d 662, 666 (Tex. 1989) ...................................... 28

*Country Roads, Inc. v. Witt,* 737 S.W.2d 362, 364 (Tex. App.—Houston [14th Dist.] 1987, no writ) ........................................................................................... 30

*DeLuna v. Guynes Printing Co. Inc.,* 884 S.W.2d 206, 210 (Tex. App.—El Paso 1994, writ denied). ................................................................................................ 32

*Dieter v. Baker Service Tools (Dieter I),* 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied); ................................................................................... 32

*Durand v. Moore,* 879 S.W.2d 196, 199 (Tex. App.-Houston [14th Dist.] 1994, no writ) .................................................................................................... 17, 29

*Dutcher v. Owens,* 647 S.W.2d 948, 950-51 (Tex. 1983) ................................... 17

*Garrett v. Great Western Distributing Co.* 129 S.W.3d 797 (Tex. App.—Amarillo 2004, no pet.). .......................................................................................................... 34

*Greater Houston Transp. Co.,* 801 S.W.2d 523, 526-27 (Tex. 1990) ................. 32

*Guidry v. Nat'l Freight, Inc.,* 944 S.W.2d 807, 811 (Tex. App.—Austin 1997, no writ) .................................................................................................................... 31

*Hooper v. Pitney Bowes, Inc.,* 895 S.W.2d 773, 777 (Tex. App.--Texarkana 1995, writ denied); ...................................................................................................... 29

*Houser v. Smith,* 968 S.W.2d 542, 544 (Tex. App.—Austin 1998, no pet.) 30,32,32

*King Ranch, Inc. v. Chapman,* 118 S. W. 3d 742 (Tex. 2003). ........................... 16

*Kelly v. Stone,* 898 S.W.2d 924, 927 (Tex. App.—Eastland 1995, writ denied) ...29

*LaBella v. Charlie Thomas, Inc.,* 942 S.W.2d 127, 137 (Tex. App.—Amarillo 1997, writ denied) .................................................................................................. 30,31

*Leadon v. Kimbrough Bros. Lumber Co.,* 484 S.W.2d 567, 569 (Tex. 1972); . 26, 28

*Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984) ........ 17

*Loram Maintenance of Way, Inc.,* 141 S.W.3d 722 (Tex. App.—El Paso 2004, pet. filed). ................................................................................25, 36, 37, 38

*Minyard Food Stores, Inc. v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002); .... 28, 29

*Newspapers, Inc. v. Love,* 380 S.W.2d 582, 589 (Tex.1964) ........................ 16, 29

*Nixon v. Mr. Property Management Co.,* 690 S. W. 2wd 546, 548-49 (Tex 1985) ................................................................................................................ 15

*Oberpriller,* 170 S.W.2d 607 (Tex. Comm. App.—1943) .................................... 30

*Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983) ........................ 30, 31

*Peek v. Equipment Services, Inc.,* 906 S.W.2d 529, 534 (Tex. App.—San Antonio 1995, no writ) ........................................................................................ 32

*Porter v. Netnir,* 900 S.W.2d376 (Tex. App.—Austin 1995, no writ) .................. 32

*Robertson v. Church of God, Int'l,* 978 S.W.2d 120, 125 (Tex. App.—Tyler 1997, pet. denied) ................................................................................................ 32

*Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex. 1971) ..... 29

*Soto v. El Paso Natural Gas Co.,* 942 S.W.2d 671, 680 (Tex. App.—El Paso 1997, writ denied) ................................................................................26, 27, 29

*Texas & Pac. Ry. Co. v. Hagenloh,* 247 S.W.2d 236 (Tex. 1952) ....................... 17

*Tierra Drilling Corp. v. Detmar,* 666 S.W.2d 661, 662-63 (Tex. App.-Corpus Christi 1984, no writ) ....................................................................................... 18

*Tex. & Pac. Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 239 (1952) .... 17

*Wal-Mart Stores, Inc. v. Odem,* 929 S.W.2d 513 (Tex. App.—San Antonio 1996, writ denied) ................................................................................................... 26

*Wolff,* 94 S.W.3d 513 (Tex 2002) ...................................................................... 17

*Wrenn v. G.A.T.X Logistics, Inc.,* 73 S.W.3d 489 (Tex. App.—Fort Worth 2002, no pet.) ................................................................................................30, 31, 33

## ISSUES PRESENTED

**ISSUE NO. 1:**

THE TRIAL COURT ERRED BY GRANTING APPELLEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT, BOTH TRADITIONAL AND NO-EVIDENCE, ON THE ISSUE OF NEGLIGENCE.

## STATEMENT OF THE CASE

Black filed this suit against Muhammad Zaffar ("Zaffar"), Smith Protective Services, Inc. ("Smith") and the owners/managers of the condominium complex at which the relevant events took place. Black alleged that he had been falsely arrested and maliciously prosecuted following his arrest pursuant to an assault charge by Zaffar. Black was no-billed by the grand jury.

Smith was granted judgment on both traditional and no-evidence summary judgment motions. A non-jury trial was held, at which Black was granted judgment against Zaffar, the only remaining defendant.

Black's appeal is only against Smith being granted summary judgment, and not against Zaffar's judgment.

## STATEMENT OF FACTS

On or about March 6, 2012, Plaintiff, Bryan Black, a resident of Houston, Texas, The Oaks of Woodlake Townhomes, was visiting a friend in another unit shortly after 5:00 p.m. His friend had a guest that they were expecting, and the townhouse complex was a community that had a guard gate at the entryway for security purposes. One of the security guards at the front gate, Muhammad Zaffar, was an employee of Defendant, Smith Protective Services, Inc. Zaffar refused to allow the guest into the complex. Bryan Black and his friend spoke to Muhammad Zaffar and asked him to allow the visitor entrance into the complex, and Zaffar refused the request in a very rude fashion and called Bryan Black's friend an offensive name. Guests are routinely permitted entry once they were identified.

This was not the first time that Muhammad Zaffar had refused to allow guests into the complex, and several complaints had been lodged against him by other tenants by way of letter and documented oral complaint. Zaffar had refused to allow guests into the complex, and when confronted about this conduct, he became rude and standoffish, and often times threatened the guests. Bryan Black went to the front of the complex to the guardhouse area and confronted Muhammad Zaffar, who was outside the guardhouse permitting other guests and residents through the entryway. When confronted by Bryan Black, Zaffar became very angry and upset

3

after Bryan Black told Zaffar that he felt Zaffar had a bad attitude and performed his job poorly. Bryan Black argued with him and told him he was stupid, but by then the guest had already left. There was no physical contact with one another, and the verbal confrontation ended while both persons were outside the guardhouse in plain sight of others that were coming and going. Bryan Black did not realize at the time how upset Muhammad Zaffar became when his authority was questioned.

Muhammad Zaffar called first called the FBI, and then the Houston Police Department to make a report that he had been assaulted. The authorities did not show up, and when Zaffar left work, he stopped by the Houston Police Department substation and filed a criminal complaint against Bryan Black. Zaffar told the police that he had been physically assaulted by Bryan Black who had threatened him and claimed Black had swung a baseball bat at Zaffar. The police department accepted Muhammad Zaffar's story as the truth and did not check out Bryan Black's version of the incident. Zaffar, through the Houston Police Department, filed criminal charges against Bryan Black under Section 22.02 of the Texas Penal Code; Aggravated Assault with a Deadly Weapon; a 2nd degree felony that carries a punishment range of 2 to 20 years in prison.

Two days later on March 8, 2012, when Bryan Black arrived home from work he was surrounded by Houston Police Department Officers in the parking lot

4

in plain view of other residents, with a shotgun pointed at his head and arrested by officers and taken to the City of Houston jail. The officers had an arrest warrant and search warrant, and searched Bryan Black's apartment and automobile while asking, "Where is the baseball bat?" No bat was found. From there, he was transported to the Harris County Jail where after about 48 hours later he eventually was allowed to arrange for a bail bond and was bonded out so that he could return to work.

Smith Protective Services, Inc. had no written policy in place concerning the filing of criminal complaints by the Security Company in charge of security on the premises for alleged wrongs committed on the premises. Further, The Oaks of Woodlake had video cameras placed at the entrance way by the guard house leading residents and others that did know better to believe that the actions of those in view of the cameras would be recorded; however, there was no recording or monitoring device connected to the cameras in question, and Smith Protective Services, Inc. knew the cameras were not functioning with recording devices.

For the next few months Bryan Black waited in anticipation and fear of whether or not he would be indicted by a Harris County Grand Jury. Bryan Black was required to employ a criminal attorney who fortunately employed a private investigator who questioned many witness and persons with knowledge of the situation and determined that there were inconsistencies in Muhammad Zaffar's

story to the police, and that Zaffar had a history of getting angry with tenants and an unsatisfactory job performance as a security guard involving issues of authority. When the Grand Jury met and heard all the evidence, they "No Billed" Bryan Black, thereby exonerating him from the false charges made against him. Even with the charges being determined to be false, there still stands a public record of an arrest and charges made against Bryan Black that is a stain on his record for everyone to see, as he had never been charged or convicted with any criminal charges in the past.

Other inhabitants of the Oaks of Woodlake condominiums saw the arrest take place with at least four police cars and many more officers physically detain, handcuff and arrest Bryan Black with guns pointed at him causing shear embarrassment and grief from the incident.

There were two important incidents shortly before the Bryan Black incident that put Smith Protective Services, Inc. on notice of Mohammad Zaffar's actions with those he came into contact with. The first was the Collins incident that occurred on February 11, 2012 and is found in the Dispatcher's log of Smith Protective Services. Records reflect that Forward Air called to talk to someone at Smith Protective Services, Inc. complaining about Mohammad Zaffar's encounter with their employee named Torres. When Zaffar was questioned about it he advised

that Torres threatened to shoot him, and that he "might have to call police." Supervisor, Amaya did not have any recollection of handling this matter, but it was found in Smith Protective Services, Inc.'s records. That should have been the first notice that Zaffar was having issues in getting along with persons he encountered on his job.

The second incident was on February 25, 2012, fourteen days later when Mrs. Collins, a resident at The Oaks of Woodlake, wrote a complaint letter about Mohammad Zaffar, who had called the police while at work and reported that her son had threatened to shoot him. Apparently Zaffar had detained her grown son at the entry gate and questioned his coming on the premises when he had done so every week to visit his elderly mother, and Zaffar was described as becoming angry over the confrontation and reported the incident to the police as an assault. Smith Protective Services, Inc. had knowledge of this as the letter was sent to the Oaks of Woodlake and forwarded on to Smith Protective Services, Inc. Zaffar denied the incident and was verbally counseled. This was the second of two incidents before the Black incidents. Two persons coming to his guard gate had threatened to kill him in a two-week period. Smith Protective Services, Inc. had notice of the fact that Zaffar had issues with many he encountered, and was unduly paranoid about persons threatening him and resorted to calling the police when he was confronted or became angry but there was no such policy in place. On February 21, in between

7

these incidents, Zaffar had received a written warning notice about not wearing a tie and needing a haircut. This was his third notice of some type of warning notice Zaffar had received, but interestingly enough, Zaffar did not receive a warning notice about either incident where he alleged he had been threatened.

## SUMMARY OF THE ARGUMENT

The areas of negligence were all outlined in the Appellant, Black's responses to both the No Evidence and Traditional Summary Judgments including the specific elements of negligence of inadequate hiring, inadequate training, inadequate supervision, and negligent retention. Evidence was established of Smith Protective Service's employee, Zaffar, being in the furtherance of his employer's business and the duty that arose to control third persons' conduct based upon foreseeability and upon actual knowledge of Zaffar's actions. The failure of Smith Protective Service to act by either counseling, disciplining, inadequately training, inadequately supervising or dismissing Zaffar was clearly set out in both of Defendant's Responses to Summary Judgment. Zaffar's general guard post orders of "deter criminal activity" were far too vague to deny liability upon course and scope.

8

## ARGUMENT AND AUTHORITIES

These two prior incidents involving Zaffar should have placed Smith Protective Services, Inc. on notice that there was something very unusual and serious going on in Zaffar's life. For two different persons to have allegedly threatened to kill a security guard (Zaffar) in less than two weeks, and then for him to threaten to kill them should have placed the employer on notice that Zaffar had serious issues going on, and that he was either the most disliked security guard in town, or he was not telling the truth. It should have been enough to raise a serious red flag with Zaffar's supervisor, Amaya, when Zaffar allegedly told him on March 6, 2012 that a resident at the Oaks of Woodlake had gone after him with a baseball bat. Plaintiff believes that by Smith's inaction in not counseling Zaffar at that moment that filing false charges against a resident where one works is a serious matter and a crime, and speaking to the other guard on duty who would have verified that she was present, but did not witness anything of the sort would have been a must before telling Zaffar to handle the situation as he saw fit, and should have notified the Oaks of Woodlake management of the allegations as well as the Plaintiff. Defendants' failure to act by either dismissing Zaffar or removing him from his post and Defendants' failure to discipline Zaffar acted as an encouragement to Zaffar to continue his increasingly paranoid behavior and

reporting of false allegations.

In Black's Sixth Amended Original Petition, Black alleged a number of specific complaints of negligence; the first of which was negligent hiring. Smith Protective Services, Inc. failed to adhere to their own standards by obtaining information about the 5 years of prior experience that Muhammad Zaffar had. Zaffar only supplied 2 years of information. Zaffar's application for employment also contained inaccurate dates of employment according to the Texas Department of Public Safety's records. Smith also requested information on the application for 7 years previous job experience, and Zaffar did not give it to them. Smith failed to adhere to their own requirements to check prior employment references and only relied upon the fact that Zaffar passed the state administered security guard test. Before Zaffar was placed at the Oaks of Woodlake, two other companies had asked Smith Protective Services to remove him from their locations, so that fact alone should have alerted Smith Protective that there was something going on with Zaffar to warrant two other employers asking him to leave.

The Plaintiff also alleged negligence for inadequate training. Such training should have included the protocol for reporting assaults on guards to supervisors immediately after their occurrence, and after they had been put on

10

notice that something serious was going on with Zaffar after two similar occurrences where Zaffar alleged that two persons attempting to enter the Oaks of Woodlake had threatened to kill him. Smith was negligent for failing to properly train Zaffar about the illegality of making false reports on persons attempting to enter the Oaks of Woodlake, and on how to diffuse such situations before they got to the point of violent threats.

Another point of negligence was negligence for inadequate supervision, failing to investigate and failing to warn. After knowledge of two prior incidents on the location of The Oaks of Woodlake, and after two previous employers had asked Zaffar to be released from duty on their premises, Smith Protective Services, Inc. should have warned other residents about Zaffar's propensity to cause problems and Smith should have conducted a reasonable investigation as to whether Plaintiff committed a criminal act against Zaffar and should have counseled Zaffar and warned Bryan Black of potential danger from Zaffar before allowing Muhammad Zaffar to file a criminal complaint against Bryan Black, a resident of their customer, Oaks of Woodlake. They further owed a duty to Plaintiff to adequately supervise Zaffar after knowing that he had claimed two other guests, Nita Collins son and Mr. Torres, an employee of Forward Air had allegedly threatened to shoot Zaffar and yet took no significant actions to properly supervise Zaffar,

11

remove him, or seek professional help for him.

Plaintiff, Black, also claimed that Smith Protective Services should have removed Muhammad Zaffar from the Oaks of Woodlake immediately upon learning of Zaffar's claim that a visitor to the property, Nick Collins, had threatened to shoot him and Zaffar called the police. Smith Protective Services' Ruben Amaya verbally counseled Zaffar and should have given him instructions on how to diffuse such situations or should have either discharged Zaffar as an employee or moved him to a different security post. Smith Protective Services, Inc. should have addressed Zaffar's claim that Mr. Torres from Forward Air had threatened him with bodily harm by either discharging Zaffar as an employee or moving him to a different security post, and any employer should have reasonably foreseen that Zaffar had a problem dealing with people he encountered, and as such began making false claims against them.

Black also alleged that Smith Protective Services, Inc. was negligent in not demanding that the security cameras and recorders be working at the time their guards were on duty, or to warn residents that such cameras were not recording. Such negligence as a proximate cause of the wrongful charges filed against Plaintiff as had there been a recorded record as advertised on the

12

front gate, then it would have given the police something to look at to determine that no assault had occurred.

Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for the intentional or negligent acts of an employee if the act is (1) within the scope of the actual or apparent general authority of the employee, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which the employee was employed. Muhammad Zaffar was acting in the course and scope of Smith Protective Security Services, Inc.'s employment as a security guard, and it is not ordinarily within the scope of a servant's authority to file criminal charges against residents for whom they should be protecting, but if a resident commits an assault against a Smith Protective Services' employee, then the employee has the right to protect himself and/or file criminal charges for assault. Smith Protective Services, Inc.'s actions of failing to take any action or measures in the two prior alleged assault incidents that it gave "encouragement and assistance" to Zaffar in the furtherance of his false criminal complaints of assault. Each time Zaffar got a little more confidence to go a step further. The first incident was just a complaint by a contractor who was doing work at the townhome complex. The next was a call to the police and the making of a report of alleged threats to kill that he decided not to follow up on, and the third resulted in the actual pursuing of a criminal complaint after Smith Protective Services failed to put a halt to Zaffar's

13

career of making false criminal complaints. Smith Protective Services is responsible to Plaintiff under the theory of respondeat superior for proximately causing the damages caused by Zaffar.

Smith's primary argument against the respondeat superior argument was that Zaffar was outside the course and scope of duties at Smith primarily because he waited until after his shift to go to the police substation and report the alleged assault, but the facts remain that Zaffar called not only the Houston Police Department (CR 200), but first called the FBI, and the Houston Police Department did come out to the apartment complex, but Zaffar had already left work. Smith further alleges that reporting of crimes was not part of the duties of a security officer. Smith's own post orders they refer to in their Motion for Summary Judgment stated: "Purpose: Gate access control, deter criminal activity and from 3:00 pm to 5:00 am patrol the property providing visual deterrence." Deterring criminal activity is a very broad term that could be construed by a jury of reasonable minds to also mean taking action against anyone who allegedly threatened a guard or tried to get access to the property for themselves or others.

Smith filed a second Motion for Summary Judgment, entitled, "No Evidence Motion for Partial Summary Judgment" (CR 432-438) on Plaintiff's issues of fraud, negligent hiring, general negligence and intentional infliction of emotional distress.

14

Plaintiff amended their petition (CR 457-467) dropping the claims of fraud and intentional infliction of emotional distress, leaving only the claims of negligence. Smith alleged that there was no evidence of negligence, proximate cause or foreseeability.

The Court granted an Interlocutory Summary Judgment (CR 621) on August 20, 2014 in favor of Smith on both partial summary judgments. The remainder of the case was called to trial on September 17, 2014 and the Court granted a Final Judgment (CR 647-648).

## Standard of Review

### Traditional Motion for Summary Judgment

The standards in viewing summary judgment evidence are:

(1) The Movant for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S. W. 2wd 546, 548-49 (Tex. 1985).

If the evidence favorable to Plaintiff is to be taken as true that is contained in the Exhibits, Affidavits, and Depositions, then there were clearly sufficient elements of each cause of action listed in the Plaintiff's Sixth Amended Original Petition. Accordingly, Appellant's motion should be denied.

## No-Evidence Summary Judgment

Plaintiff has presented evidence raising issues of material fact as to the elements specified in Appellant's motion. No-evidence summary judgment is improper if more than a scintilla of evidence exists which conclusively establishes the basic elements of Appellant's claims. Appellant has more than met that burden in this case. See *King Ranch, Inc. v. Chapman,* 118 S. W. 3d 742 (Tex. 2003).

The Appellant filed two separate responses with attached exhibits opposing both Motions for Summary Judgment, and the following arguments and evidence were used in response thereto:

## Respondeat Superior Argument

Appellant argued that liability upon Smith Protective Services, Inc. rested at least in part on one particular form of vicarious liability — the doctrine of respondeat superior. This doctrine "holds the master liable for the torts of his servant committed in the course of his employment" and is "essentially a policy doctrine...." *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 589 (Tex.1964). "Except for acts personally directed by the principal, the liability of the master is founded

upon the contractual arrangement with the servant; either expressed or implied which vests in him the right to control the details of the work." *Id.; see also Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984) (employer and employee were jointly and severally liable for tort committed by employee in the course and scope of his employment). "The theories of vicarious and joint and several liability are judicially created vehicles for enforcing remedies for wrongs committed." *Dutcher v. Owens,* 647 S.W.2d 948, 950-51 (Tex. 1983). "Justified on public policy grounds, they represent a deliberate allocation of risk." *Id.; see also Wolff,* 94 S.W.3d at 541.

"The typical respondeat superior claim involves an allegation of negligence on the part of the employee" occurring within the course and scope of the employee's employment. *Buck v. Blum,* 130 S.W.3d 285, 288 (Tex.App.-Houston [14th Dist.] 2004, no pet.). "It is not ordinarily within the scope of a servant's authority to commit an assault on a third person." *Tex. & Pac. Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 239 (1952). However, an assault can be considered to be "in the course and scope of employment when the nature of the employment necessitated the use of force (such as the duty to guard property [deter criminal activity]) so that the use of force may be in furtherance of the employer's business even if more force than necessary is applied." *Buck,* 130 S.W.3d at 289 n. 2 (citing *Hagenloh,* 247 S.W.2d at 239); *see also Durand v. Moore,* 879 S.W.2d

17

196, 199 (Tex.App.-Houston [14th Dist.] 1994, no writ) ("When an employee commits an assault, it is for the trier of fact to determine whether the employee ceased to act as an employee and acted instead upon his own responsibility."); *Tierra Drilling Corp. v. Detmar,* 666 S.W.2d 661, 662-63 (Tex. App.-Corpus Christi 1984, no writ) (no evidence supported finding that employee was acting within the course of his employment, in pursuit of his duties, or in the furtherance of Tierra's business when he assaulted co-worker).

Further, Plaintiff alleges in their Sixth Amended Original Petition (CR 457-467) that Defendant, Smith Protective Services, Inc.'s actions of failing to take any action or measures in the prior alleged assault incidents that it gave "encouragement and assistance" to Zaffar in the furtherance of his false criminal complaints of assault (See time line CR 78-83). The simplest explanation requires the knowledge of the short history of Mohammad Zaffar on the post at Oaks of Woodlake. The best way to understand the timeline is to look at the timeline created by Plaintiff's expert witness, Patrick Murphy. There were two important incidents shortly before the Bryan Black incident. The first was the Forward Air (Torres) incident (CR-371) and the second, the Collins incident (CR-370) mentioned in both the Amaya and Bell depositions. The first incident occurred on February 11, 2012 and is found in the Dispatcher's log (CR-371) and is mentioned in both the Amaya and Bell depositions. Records reflect that Forward Air called to

18

talk to someone at Smith Protective Services, Inc. about Mohammad Zaffar's encounter with their employee named Torres. When Zaffar was questioned about it he advised that Torres threatened to shoot him, and that he "might have to call police." Amaya did not have any recollection of handling this matter, but it was found in Smith Protective Services, Inc.'s records. (CR- 371)That should have been the first notice that Zaffar was having issues in getting along with persons he encountered on his job.

The second incident was on February 25, 2012, fourteen days later when Mrs. Collins, a resident at The Oaks of Woodlake, wrote a complaint letter (CR-370) about Mohammad Zaffar, who had called the police while at work and reported that Mrs. Collins son had threatened to shoot him. Apparently Zaffar had detained her grown son at the entry gate and questioned his coming on the premises when he had done so every week to visit his elderly mother, and Zaffar was described as becoming angry over the confrontation and reported the incident to the police as an assault. Both the Oaks of Woodlake and Smith Protective Services, Inc. had knowledge of this as the letter was sent to the Oaks of Woodlake and forwarded on to Smith Protective Services, Inc. Apparently Zaffar denied the incident, although there is a Houston Police Department record where he called the police out (CR-290 ) and the letter from Collins' mother, and an admission from Zaffar's supervisor that Zaffar was verbally counseled. This should have been the

19

second notice that he was having difficulty getting along with tenants and their guests and perhaps that he had exhibited episodes of paranoia over the incidents. Two persons coming to his guard gate had threatened to kill him in a two-week period. This second incident was only 14 days after the first. At that point the supervisor at Smith Protective Services, Inc. should have seen a pattern here that Zaffar could not get along with many he encountered, and perhaps was unduly paranoid about persons threatening him and resorted to calling the police when he was confronted or became angry. On February 21, in between these incidents, Zaffar had received a written warning notice about not wearing a tie and needing a haircut. This was his third notice of some type of warning notice Zaffar had received, but interestingly enough, Zaffar did not receive a written warning notice about either incident where he alleged he had been threatened; thereby reflecting the indifference of the employer, Smith.

Each time Zaffar got a little more confidence to go a step further. The first incident was just a complaint by a worker who was doing work at the townhome complex. The third instance was when Zaffar threatened Shelley White's boyfriend and gave him trouble in coming on the property (CR 92-94). The next was a call to the police and the making of a report of alleged threats to kill that he decided not to follow up on, and the third resulted in the actual pursuing of a criminal

20

complaint after Smith Protective failed to put a halt to Zaffar's career of making false criminal complaints.

Smith Protective Services, Inc. claimed that they did not authorize, benefit from or ratify the conduct of Mohammad Zaffar, but the facts show otherwise, and Appellant's expert witness said otherwise (CR 78-83). After explaining the time line, Patrick Murphy stated in his report: "at that point the supervisor at Smith Protective Services, Inc. should have seen a pattern here that Zaffar could not get along with many he encountered, and perhaps was unduly paranoid about persons threatening him and resorted to calling the police when he was confronted or became angry (CR 79). These two prior incidents should have placed …Smith Protective Services, Inc. on notice that there was something very unusual and serious going on in Zaffar's life. For two different persons to have threatened to kill a security guard in less than two weeks should have placed everyone on notice that Zaffar had serious issues going on, and that he was either the most disliked security guard in town, or he was not telling the truth. It should have been enough to raise a serious red flag with Zaffar's supervisor, Amaya. (CR-80). "The failing to counsel or reprimand Zaffar on the two prior occasions or counsel with him or to send him to counseling or remove him from this post could constitute negligence and ratification of Zaffar's act" (CR-80).

These two prior incidents should have placed Smith Protective Services, Inc. on notice that there was something very unusual and serious going on in Zaffar's life. For two different persons to have threatened to kill a security guard in less than two weeks should have placed everyone on notice that Zaffar had serious issues going on, and that he was either the most disliked security guard in town, or he was not telling the truth. It should have been enough to raise a serious red flag with Zaffar's supervisor, Amaya, when Zaffar allegedly told him on March 6, 2012 that a resident at the Oaks of Woodlake had gone after him with a baseball bat. Plaintiff believes that by Smith's inaction in not counseling Zaffar at that moment that filing false charges against a resident where one works is a serious matter and a crime, and speaking to the other guard on duty who would have verified that she was present, but did not witness anything of the sort would have been a must before telling Zaffar to handle the situation as he saw fit. These facts present a jury question that Smith may have authorized, benefited and ratified such conduct. The failing to counsel or reprimand Zaffar on the two prior occasions or counsel with him or to send him to counseling or remove him from this post could constitute negligence and ratification of Zaffar's act as is now alleged in Plaintiff's Sixth Amended Original Petition. Smith may have believed they would benefit from such inaction by not having to find another guard to work the post at the Oaks of Woodlake, and their cavalier attitude of saying they do not want to interfere with

22

one of their guards filing a criminal complaint is apparently a company cop-out policy that should be questioned and could constitute a negligence finding by a finder of fact.

With regard to the question of whether the actions of Smith Protective Service, Inc. were enough to cause the prosecution, Smith Protective Service should have known that the likelihood of the information provided by Mohammad Zaffar was false based upon the two previous incidents, and if they had questioned their other guard on duty, they would have known for sure it was, and the failure to investigate the incident is a further indication of Smith's indifference.

Further evidence indicates that Estella Bell, the assistant manager, spoke to Muhammad Zaffar immediately after the alleged Bryan Black incident (CR 148) and there was another guard in the guard house at the time of the alleged incident that did not see any incident with a baseball bat (CR 149) even though she was present in the same guard booth and would have seen it had such an incident taken place. Estella Bell further testified that most workers were afraid to work with him (Zaffar) because they always got into it with him (CR 149). Estella Bell stated in her deposition: "With the other two incidents on record, each one of those persons said that he (Zaffar) threatened to shoot them, "That he's not going to let nobody hurt him, and he will shoot them if he had to". And he was going to call the FBI. That was always his words. "(CR 166)

23

As far as evidence that there was an absence of probable cause, see the affidavit of Bryan Black, Plaintiff, as (CR 403-407) when Zaffar told 'Black if Black didn't stop the discussion with Zaffar in the parking lot that Zaffar would call the police and report something that did not actually happen (which he eventually did follow through on).

Finally, the deposition of Shelley White, Exhibit 4, stated that she was a witness to the entire conversation in the parking lot in front of the guard booth and the alleged confrontation between Mohammad Zaffar and Bryan Black because her boyfriend had had some confrontation with the same guard a few weeks earlier, and she was interested in what Zaffar was up to, so she stopped and listened, and she confirms that there was no confrontation with a baseball bat, and that Bryan Black did not have a baseball bat and never threatened Zaffar. There is ample evidence to show that no actual assault or attempted assault ever took place.

Employers usually are not always liable for the intentional or negligent misconduct of their employees. But when an employer's employees, agents, and supervisors go astray, the employer can be held liable for their actions under several theories, including respondent superior, negligent hiring, training, supervision, and retention. In addition, the employer may be held strictly liable in cases where supervisors engage in employment discrimination that results in a "tangible job detriment" to an employee.

24

Recently, in *Loram Maintenance of Way, Inc. v. Ianni*, the El Paso Court of Appeals upheld a jury verdict that imposed liability on the employer when its employee shot and severely injured a police officer while the employee was off-duty and away from his job site. The jury awarded the plaintiff police officer $1.3 million in actual and punitive damages for his injuries. Although *Loram* represents an extreme case of imposing liability on an employer for the intentional acts of its employees, it serves as an example of the liability employers may suffer. Liability may be imposed on companies to re-examine how employers hire, supervise, retain, and train their employees.

The expert report of Patrick Murphy (CR-379-384) was used as evidence to contest the summary judgment. It outlines in detail the specific elements present that provide evidence of inadequate hiring, inadequate training, inadequate supervision, negligent retention ("As early as February 11, 2012, Smith Protective had notice of Zafar's violent threats when he called Smith's dispatchers and threatened to shoot a fellow guard [see dispatcher's daily log, Feb. 11, 2012, used as Exhibit 2, Deposition George Black] threatening to shoot another is a criminal act) (CR 380), and negligent security against Smith Protective Services, the most important of which seems to be the failure to remove Zaffar after they had notice that he had committed a criminal act and threats against other residents prior to Bryan Black. Expert Murphy summarizes the events and concludes that Smith

25

Protective Services failed to act in a reasonable and ordinary manner and that such negligence was a proximate cause to Bryan Black's arrest and ultimate harm caused by them. Smith Protective Services had no expert witness evidence.

## Vicarious Liability/Respondeat Superior

Under the doctrine of *respondeat superior*, an employer may be held vicariously liable for the intentional or negligent acts of an employee if the act is (1) within the scope of the actual or apparent general authority of the employee, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which the employee was employed. See *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1995) (an employer, as principal, may be held liable for tortious acts committed by its employees as agents in the course and scope of their employment under the doctrine of respondeat superior); *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 680 (Tex. App.—El Paso 1997, writ denied); *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513 (Tex. App.—San Antonio 1996, writ denied) (corporate liability for an employee's negligent torts is governed by the same rules as those that determine the liability of a corporation for intentional torts). In other words, an employer is liable for its employee's acts where they fall within "the course and scope of his employment." *Leadon v. Kimbrouh Bros. Lumber Co.*, 484 S.W.2d 567 (Tex. 1972). The court in *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 680 (Tex. App.—El Paso 1997, writ

26

denied) discussed what actions are within the course and scope of employment. The case also serves a prime example to employers of what not to do when faced with a rogue employee. In *Soto*, the plaintiff sued her employer, El Paso Natural Gas, for sex discrimination based on sexual harassment, assault and intentional infliction of emotional distress ("IIED"). Plaintiff worked as a secretary and was subjected to repeated harassment from a fellow employee, who called her "lopsided" after she underwent a mastectomy, made repeated comments to her that were sexual in nature, and at one point touched her breast while he yelled at her. *Id.* at 675. The plaintiff reported most of the incidents to her supervisors, and supervisors witnessed several of the events. However, the supervisors would ignore her comments, tell her that "that's Tom," or tell her to ignore Tom and walk away from him because he would not listen to anyone. *Id.* After she reported the inappropriate touching to the Human Resources department, they conducted an investigation and concluded that Tom's conduct was abusive toward women and created a hostile work environment. *Id.* at 675-76. Despite warnings to the contrary Tom nevertheless continued to harass the plaintiff and stated that he had set "Human Resources straight." *Id.* at 676. It was not until after Plaintiff filed suit that El Paso finally disciplined Tom by demoting him and advising him to "fix his language." *Id.*

The trial court granted summary judgment to the company. Plaintiff appealed. The court noted that the incident centered around Tom becoming angry with Plaintiff and berated her for not typing some labels for him in a timely manner. *Id.* at 681. The court held that summary judgment was precluded because the inappropriate touching occurred at work and during regular hours. The court reasoned that typing was a regular part of plaintiff's duties, and the incident arose out of Tom's displeasure with her work and not out of personal animosity towards her. *Id.* The court also rejected the company's argument that it had taken prompt remedial action once it was informed of Tom's actions based on evidence that management actively discouraged employees from complaining directly to human resources (*i.e.*, without first going through management) and the company did not punish or correct Tom's actions until after plaintiff filed her EEOC charge. *Id.* at 680. In effect, the employer expanded Tom's job duties to include harassing the plaintiff by failing to take proper steps to stop his conduct.

### In furtherance of the employer's business

The employee must have committed the act or omission in furtherance of the employer's business and "for the accomplishment of the object for which the employee is employed." *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002); *Cosgrove v. Grimes*, 774 S.W.2d 662, 666 (Tex. 1989); *see* PJC 7.6. *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex. 1972);

28

*Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357 (Tex. 1971); (observing that "vicarious liability is imposed only for authorized action in the furtherance of an employer's business"). In large part, liability will turn on the ability of the employer to control the employee. *See, e.g., Baptist Memorial*, 969 S.W.2d at 947. However, courts must consider whether the specific misconduct was in furtherance of company business and part of the employee's job. *Minyard*, 80 S.W.3d at 578-79 (holding it was reversible error where "court of appeals only considered wrongdoer's general authority as a store manager and [did] not include an analysis of whether [his] defamatory remarks were in furtherance of Minyard's business and for the accomplishment of the object for which [he] was employed ").

### What is considered scope of employment?

To be within the scope of employment, "the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Kelly v. Stone*, 898 S.W.2d 924, 927 (Tex. App.—Eastland 1995, writ denied) (internal quotations and citations omitted); *Durand v. Moore*, 879 S.W.2d 196, 199 (Tex. App.—Houston [14th Dist.] 1994, no writ) (same); Soto, 942 S.W.2d at 680. The employer need not have approved or authorized the employee's specific action, as long as the employee acted within his or her general authority and for the benefit of the employer. *See, e.g., Soto*, 942 S.W.2d at 680; *Hooper v. Pitney Bowes, Inc.*, 895 S.W.2d 773, 777 (Tex. App.--Texarkana 1995, writ denied); *Love*, 380 S.W.2d

29

at 589. This is true even if an employee's act was contrary to the express directions of the employer. See *Oberpriller*, 170 S.W.2d at 610; *Country Roads, Inc. v. Witt*, 737 S.W.2d 362, 364 (Tex. App.—Houston [14th Dist.] 1987, no writ).

## Liability for Negligent Hiring, Training, Supervision, and Retention

In contrast to vice-principal and vicarious liability, liability for negligent hiring, training, supervision, or retention arises directly from the employer's conduct. For example an employer can be found liable for negligence in hiring an employee that the employer knew or should have reasonably known was incompetent or unfit and thereby created an unreasonable risk of harm to others. *See Wrenn*, 73 S.W.3d at 496.

## Duty

In general, there is no duty to control a third person's conduct. *Phillips*, 801 S.W.2d at 525. A duty will arise however where a special relationship exists between the parties, such as that between an employer and its employees. *Id.*; *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983). The employer-employee relationship may create a duty to a third party only if the third party's harm is the result of the wrongdoer's employment. *Houser v. Smith*, 968 S.W.2d 542, 544 (Tex. App.—Austin 1998, no pet.); *see LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 137 (Tex. App.—Amarillo 1997, writ denied) ("To

30

impose liability for negligent hiring, there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant."); *Robertson v. Church of God, Int'l*, 978 S.W.2d 120, 125 (Tex. App.—Tyler 1997, pet. denied) ("[T]here is no question that there must be some connection between the plaintiff's injury and the fact of employment.").

No duty is created if an individual bears no relation to the employer's business or if the injury cannot be directly traced back to the fact of the wrongdoer's employment. *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 811 (Tex. App.—Austin 1997, no writ); *LaBella*, 942 S.W.2d at 137. In determining whether the defendant owed the plaintiff a duty in a negligent hiring, training, supervision, or retention case, courts will consider several factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Otis Eng'r Corp.*, 668 S.W.2d at 309; *Houser*, 968 S.W.2d at 544. Of all these factors, foreseeability of the risk is the foremost and dominant consideration and required to establish duty and proximate cause. *Phillips*, 801 S.W.2d at 525; *Wrenn*, 73 S.W.3d at 496. But the employer must not only have some knowledge of the employee's condition, but the employer must also affirmatively exercise some control over the employee.

*See Greater Houston Transp. Co.,* 801 S.W.2d 523, 526-27; *DeLuna v. Guynes Printing Co. Inc.,* 884 S.W.2d 206, 210 (Tex. App.—El Paso 1994, writ denied).

## Foreseeability

To prove foreseeability in negligent training, retention, or supervision cases, there must be evidence that the plaintiff's *injuries were brought about by reason of the employment of the incompetent employee. Houser,* 968 S.W.2d at 544 (emphasis added); *Dieter v. Baker Service Tools (Dieter I),* 739 S.W.2d 405, 408 (Tex. App.—Corpus Christi 1987, writ denied); *Porter,* 900 S.W.2d at 386 (negligent retention) *Peek v. Equipment Services, Inc.,* 906 S.W.2d 529, 534 (Tex. App.—San Antonio 1995, no writ) (holding that there was no basis for negligent retention, and supervision claims). Without such a required connection, "an employer would essentially be an insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Houser,* 968 S.W.2d at 544 (emphasis added); *Robertson,* 978 S.W.2d at 127.

In *Robertson,* for example, the court refused to impose a duty on a church that hired and retained a minister that allegedly sexually assaulted his massage therapist during message sessions because there was no connection between the hiring of the minister and the act he committed. *Robertson,* 978 S.W.2d at 122. The court stated that "there is no question that there must be some

connection between the plaintiff's injury and the fact of employment." *Id.* at 125. Plaintiff argued that the church should be held liable for negligent hiring and retention because she and the minister had discussed religion and he had invited her to his church. The court rejected this argument and explained "it is not plausible to conclude that merely discussing one's occupation and employer while on personal business furnishes a connection between the negligent hiring and the wrongful conduct of the employee." *See id.*

In the *Wrenn* case discussed above foreseeability was a key issue in the court's decision to reverse the summary judgment granted in favor of the employer regarding the plaintiff's claim of negligent hiring, supervision and retention. 73 S.W.3d at 499. Plaintiff's evidence for the claim showed that the rogue supervisor had a history of carrying a buck knife, threatening employees with a hammer, having weekly confrontations with other employees, and using profanity. *Id.* In addition, another supervisor knew of the rogue supervisor's behavior and yet another supervisor was aware of an incident where the rogue supervisor had knocked an employee down with a forklift and dropped a steel beam on him. *Id.* The court held that this evidence was sufficient to create a fact issue as to whether the rogue supervisor's assault and resulting injuries "were a foreseeable consequence of the [employer's] supervision." *Id.* at 500. Thus, the court reversed the summary judgment granted as to the negligent hiring,

33

supervision and retention claim and remanded it back to the trial court for further proceedings. *Id.* In this Bryan Black case, the supervisor, Amaya, had direct knowledge of at least two incidents where Zaffar had had such confrontations with persons entering the townhome gate that he alleged to have threatened to shoot him. The supervisor took no action on one, and only gave a verbal warning on the other. Zaffar's failure to wear a tie and wearing a wrinkled uniform garnered much harsher action than the two previous instances of threats and false reports to the police against persons entering the complex.

If there is no evidence that the rogue employee has not exhibited a prior propensity for violence or assault behavior, a claim for negligent, hiring, retention, supervision or training will not survive the summary judgment stage. For example, in *Garrett v. Great Western Distributing Co.*129 S.W.3d 797 (Tex. App.—Amarillo 2004, no pet.). the court upheld a grant of summary judgment on a claim for negligent supervision where the facts showed the employer did not know about its employees' propensity for violence. In *Garrett*, several beer distributor employees had engaged in a bar fight with the plaintiff while they were off-duty. *Id.* at 799. The employees were in their uniforms and had driven their company trucks to the bar. One of the employees directed some comments at the plaintiff's wife, and the fight ensued. *id.* The husband and wife sued the distributor for vicarious liability, vice-principal liability, and negligent supervision

34

of its employees. With regard to the negligent supervision claim, the court upheld the summary judgment in favor of the distributor because there was no evidence that any of the employees had ever exhibited violent tendencies, engaged in fights, or otherwise had violent propensities before the fight. As the court stated:

[T]he basis for responsibility lies in the master's own negligence in omitting to supervise an incompetent [or historically violent] employee whom the master knows or should have known through the exercise of reasonable care was incompetent [or violent] and thereby created an unreasonable risk of harm to others. *Id.* at 803-04. Because the plaintiffs failed to show that the employer knew or should have known about these propensities prior to the fight, the court held that the trial court properly granted summary judgment. That is not the situation in the Bryan Black case. Patrick Murphy's expert report clearly sets out the fact that Smith Protective should be liable for inadequate hiring, inadequate training, inadequate supervision, negligent retention, and negligent security. Expert Patrick Murphy's affidavit states: "I have also attached my corrected expert report which contain my expert opinions about this case. It is my opinion that the Smith Protective Services should have removed Muhammad Zafar from the Oaks of Woodlake immediately upon learning of Zaffar's claim that a visitor to the property, Nick Collins, had threatened to shoot him and had called the police. Smith Protective Services' Ruben Amaya verbally counseled Zaffar and gave him

instructions how to diffuse future situations. Smith Protective did not address Zaffar's attempt to have Mr. Collins arrested for aggravated assault or any company protocol regarding direct threats against a security officer and how that is to be handled in the future." Had Zaffar been removed from his position, he would have never had the opportunity to file the false charges against Bryan Black.

### *Loram Maintenance of Way, Inc. v. Ianni*

Where there is clear evidence that a supervisor or employer knows of an employee's incompetence or violent propensities, courts will uphold a claim for negligent, hiring, training, supervision, and retention. It certainly raises a fact question that is a jury issue. This also raises the potential for actual and punitive damages. Recently, in a case from the El Paso Court of Appeals, the court held that an employer was liable when one if its employees shot a police officer that had seen him in a violent argument with his wife. The incident occurred away from the job site and while the employee was off-duty. *See Loram Maintenance of Way, Inc., 141 S.W.3d 722* (Tex. App.—El Paso 2004, pet. filed).

In *Loram*, the rogue employee was part of a crew that repaired railroad tracks *Id.* at 726. The crew would work three months at a time, between thirteen to fourteen hours a day, and up to seven days a week. *Id.* The crew members would stay at a hotel paid for by their employer, Loram, and the employees' wives and girlfriends were permitted to stay with them. Several of the

crew members and supervisors would take crystal methamphetamine to stay awake and alert. The supervisors would give crew members time off to obtain more drugs for the crew. *Id.* On the day of the incident, Robert Tingle, a crew member, was "strung out" on crystal meth and returned to the motel after working a twelve hour shift. At the motel, Tingle began arguing with his wife, and took her to his car and threatened her with a gun. As the car was moving, she jumped from the car and screamed for help. The plaintiff police officer was leaving a restaurant when he saw the incident. As he approached Tingle's car, Tingle shot him and left him severely injured. The police officer sued Loram for, among other things, negligent retention and negligent supervision. Loram sought summary judgment on the basis that it owed no duty to the officer and its conduct was not the proximate cause of his injuries. *Id.* at 726. The jury returned a verdict in favor of the officer for $800,000 in actual damages and $500,000 in punitive damages. *Id.* at 727.

The court upheld the jury verdict based on negligent supervision and retention because the supervisors knew of Tingle's (and the rest of the crews) pervasive drug use and a prior incident where Tingle had attacked another crew member's wife with a knife. *Id.* at 728. The court held that not only did the supervisors have knowledge of Tingle's prior behavior, but concluded that the field clerk had "some asserted control" over Tingle. *Id.* Thus, the court held that "a duty was imposed on Loram not because it had mere knowledge of Mr. Tingle's

37

encourage drug usage and altered state of mind, that is, his incapacity, but because of its negligent exercise of some asserted control over Mr. Tingle once Loram's supervisors acted affirmatively to prevent Mr. Tingle from causing an unreasonable risk of harm to others." *Id.* at 729.

Loram also challenged the legal and factual sufficiency of the jury's finding that the employer was the proximate cause of the police officer's injuries and that the shooting was foreseeable. Again, the court stated that the evidence was sufficient to support the jury finding because 1) the supervisors had knowledge of and encouraged and facilitated of the rampant drug use among the crew, 2) despite warnings and complaints, a *Loram* supervisor ignored Tingle's escalating drug abuse and violent behavior, and 3) the same supervisor failed to follow the company's drug testing and treatment procedure. *Id.* at 735. Thus, the court concluded that *Loram's* negligence was a substantial factor in causing the officer's injuries and the court not say that "that *Loram* could not have anticipated the general danger it created in their negligent conduct." *Id.* at 736. Accordingly, the court affirmed the jury's verdict and award of actual and punitive damages.

## CONCLUSION AND PRAYER

The areas of negligence were all outlined in the Appellant, Black's responses to both the No Evidence and Traditional Summary Judgments including the specific

elements of negligence of inadequate hiring, inadequate training, inadequate supervision, and negligent retention. Evidence was established of Smith Protective Service's employee, Zaffar, being in the furtherance of his employer's business and the duty that arose to control third persons' conduct based upon foreseeability and upon actual knowledge of Zaffar's actions. The failure of Smith Protective Service to act by either counseling, disciplining, inadequately training, inadequately supervising or dismissing Zaffar was clearly set out in both of Defendant's Responses to Summary Judgment. Zaffar's general guard post orders of "deter criminal activity" were far too vague to deny liability upon course and scope. The trial court erroneously granted the summary judgment when the Appellant had set forth substantial evidence of all elements of negligence, duty, foreseeability and damages, and the summary judgment in favor of Appellee Smith Protective Services, Inc. should be set aside, and a new trial should be granted.

## PRAYER

Appellant Bryan Black, prays that the trial court's Final Judgment be reversed and remanded for trial.

## STATEMENT OF ORAL ARGUMENT

Appellant requests Oral Argument.

Respectfully submitted,

LAW OFFICES OF PATRICK G. HUBBARD, P.C.

BY: _/s/Patrick G. Hubbard_

PATRICK G. HUBBARD

**ATTORNEY FOR APPELLANT, Bryan Black**

## CERTIFICATE OF SERVICE

This is to certify that on the 17th day of March, 2015, a true and correct copy of the above and foregoing has been served upon counsel of record via e-file and email as follows:

Via Email
Todd H. Tinker, Esq
TinkerLaw@TinkerLaw.com

Patrick G. Hubbard

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief contains 9087 words.

*/s/ Patrick G. Hubbard*
Patrick G. Hubbard
